IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

    -v-

$392,495.08 IN UNITED STATES CURRENCY
SEIZED FROM M&T BANK NO. 9862908184,
HELD IN THE NAME OF MARKET STREET
DEBT PARTNERS LLC,

        Defendant.

_____

      The United States of America, by its attorney, James P. Kennedy, Jr., United States

Attorney for the Western District of New York, Grace M. Carducci, Assistant United States

Attorney, of counsel, for its verified complaint for forfeiture herein alleges as follows:

## INTRODUCTION

      1.    This is an action in rem for the forfeiture of $392,495.08 United States

Currency, seized from M&T Bank No. 9862908184, held in the name of Market Street Debt

Partners LLC (hereinafter the "defendant currency").  The defendant currency is subject to

forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 984, as any

property, real or personal, which constitutes or is derived from proceeds traceable to any

offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title)

("SUA"), namely, wire fraud in violation Title 18, United States Code, Section 1343 and

conspiracy to commit wire fraud in violation of  Title 18, United States Code, Section 1349.

In addition, the defendant currency is subject to forfeiture pursuant to Title 18 United States

Code, Sections 981(a)(1)(A) and 984, as property involved in a money laundering transaction and/or as property traceable to such property.

2.     This Court has subject matter jurisdiction of this action pursuant to Title 28, United States Code, Sections 1345 and 1355(a) and in rem jurisdiction pursuant to Title 28, United States Code, Sections 1355(b) and 1355(d). Venue is properly premised in the Western District of New York pursuant to Title 28, United States Code, Section 1395.

3.     The defendant currency was seized pursuant to the authority of a seizure warrant issued by the Honorable Michael J. Roemer, United States Magistrate Judge and executed on May 7, 2020  for the following bank account:

   M&T Bank Account No. 9862908184,  held in the name of Market Street Debt Partners LLC, up to the amount of $392,495.08 (hereinafter referred to as the "M&T 8184").

4.     The defendant currency was placed in and remains in the custody of the Port Director, United States Customs and Border Protection, Buffalo, New York, within this judicial district.

5.     Based on the investigation and review of the bank records,  M&T 8184 contained proceeds of SUA to wit: Wire Fraud and Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Sections 1343 and 1349, and was involved in Money Laundering violations or traceable to property involved in Money Laundering in violation of Title 18, United States Code, Section 1957.

## COMMON DEBT COLLECTION INDUSTRY LANGUAGE

6.     The following terms are relevant to operations in the debt collection industry

and the allegations in this complaint:

a.     <u>Merchant Account</u>:  A merchant account is held by a financial institution which allows the client/account holder to accept credit/debit card payments from customers.  It is common for unlawful debt collection groups engaged in wire fraud schemes to have access to several merchant accounts, tied to several bank accounts, to process payments from victims due to the likelihood of an account being shut down for fraud, chargebacks or otherwise.

b.     <u>Payment Processing</u>:  Payment processing is the system and protocol in the debt collection industry for accepting payments.  Proceeds typically follow the following pathway: collect payment from debtors; submit payment information to the merchant accounts (sometimes relayed through several entities); and, disburse actual proceeds from the merchant accounts back to the bank accounts controlled by the debt collector (liquidation).

c.     <u>Third-Party Payment Processor</u>:  Debt collectors engaged in fraud often use "third-party payment processors" as a partner entity for debtor (victim) payment processing.  These third-party payment processors usually maintain the merchant accounts, some being in connection with a legitimate business, which they allow to be used by other debt collection organizations to accept debtor payments.  In exchange for the use of their merchant accounts, the third-party processor will collect a fee or percentage from the monies processed through the account collected by other debt collection businesses.

d.     <u>Chargebacks</u>: A "chargeback" is essentially a consumer request to a credit card company or card servicer for the reversal of a transaction.  Due to common unlawful debt collection tactics involving threats and misrepresentations used to coerce payments from victims by certain businesses engaging in a wire fraud scheme, it is common for victims of these schemes to later seek chargebacks of their payments.  A high chargeback percentage against a debt collection business is empirical data suggesting the existence of a wire fraud scheme.  These chargebacks are claims corroborated by the victim and the victim's credit/debit card servicer.

e.     <u>Know your Customer ("KYC")</u>:  The KYC business model is standard and required by law for financial institutions, including payment processors.  It is meant to retain the integrity of the financial market and was employed as a means to combat terrorism in the Patriot Act.

f.      Debt portfolios a/k/a paper: Debt portfolios contain a debtors' personal information related to a current or past loan account.  Debt portfolios and outstanding debts may be bought and sold among various entities in the debt collection industry.  In certain cases, the debt portfolios wire fraud schemes/unlawful debt collection businesses seek, purchase, and use are typically exploited and misused.

g.      Over biffing: Over-biffing or "juicing" is a tactic that falsely inflates a debt balance.  The debtor is overcharged and the debt collector fraudulently collects more than what is actually owed. The term is called "over biffing" because the scammers overstate a person's "balance in full," which is sometimes shortened to BIF.

## **APPLICABLE LAW**

7.      False or Misleading Practices -The Fair Debt Collection Practices Act

("FDCPA"): states in relevant parts, Title 15, United States Code, 1692e:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

… (2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
                                        . . . .
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
(13) The false representation or implication that documents are legal process.
                                        . . . .
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

## MARK MILLER'S BUSINESSES

8.     The following are debt collection businesses that are owned and operated by Mark M. Miller (hereinafter as "Miller") and Associates.  Miller's businesses and employees mainly operated at a commercial property leased by Miller at 1561 Kenmore Avenue, Kenmore, New York.

a.  American Elite Contractors: this Limited Liability Company ("LLC") was Miller's roofing business which did conduct legitimate business.  However, American Elite Contractors' payroll and bank account were commingled with Miller's debt collection businesses.

b.  American Elite Recovery: this LLC was used by Miller for debt collection business on or about 2018 to 2019.

c.  AME Professionals: this LLC was used by Miller for debt collection business and banking from on or about 2019 to 2020.

d.  East Coast Business Solutions, Inc: this corporation was used by Miller on or about the spring of 2020 for debt collection and business banking activity.

e.  Oak Barnes and Associates; Law Office of American Elite; and, others: these unregistered business names, and variations of them, are fake entities fabricated by Miller and associates for the purposes of defrauding victims via interstate wires.  Miller's wire fraud scheme/debt collection operation contacted debtors and identified as a false entity to avoid detection and coerce payments from victims.

(hereinafter collectively referred to as "Miller's businesses").

9.     Miller operated and managed his businesses with Associate 1, Associate 2, Associate 3, and Associate 4 (herein collectively as "Associates"); and several employees operating under them.  Miller and his Associates willfully and knowingly operated Miller's businesses under the control of Miller, executing the false or misleading debt collection practices in violation of the Fair Debt Collection Practices Act; Title 15 United States Code,

Section 1692e and collecting victim payments through interstate wires in violation of Title 18, United States Code, Sections 1343 and 1349.

## PAYMENT PROCESSORS

10.     Based upon the training and experience of law enforcement related to unlawful debt collection schemes, the payment processor is a necessary entity that facilitates a wire fraud scheme/unlawful debt collection operation by providing the debt collection business with the capability of accepting debit/credit cards as payments.  Bank accounts maintained by the payment processors funnel SUA proceeds from the merchant accounts they hold and route the SUA proceeds to the unlawful debt collection business' accounts. In this case, the payment processor for Miller's wire fraud scheme/unlawful debt collection activities was Market Street Debt Partners, LLC.

11.     It is known by law enforcement that third-party payment processors like Market Street Debt Partners which hold merchant accounts are routinely used to handle the payments of victims on behalf of businesses engaging in wire fraud/money laundering schemes, like unlawful debt collection businesses.  Typically, a fee based on a percentage of money being remitted to the debt collection business through the payment processor's merchant account is taken as a service fee by payment processors/merchants.

12.     It is known by law enforcement that third-party payment processing is a necessary element for wire fraud schemes involving bad collection practices because it is difficult for wire fraud schemes/unlawful debt collectors to maintain a payment processing/merchant system in-house due to the scrutiny of financial institutions.  Financial

institutions and merchant services that process debit/credit cards are aware of high-risk clients (like debt collectors) and typically opt to close these accounts once they learn of derogatory consumer complaints and/or chargebacks.  Further, legitimate merchant services accounts will typically decline clients with criminal and/or derogatory business histories.  Many financial institutions will not accept or maintain business bank accounts for debt collection businesses, or, if they do, will close the bank accounts if they discover a debt collection business has misrepresented their nature of business in order to open a bank account.

## MARKET STREET DEBT PARTNERS, LLC

13.     Market Street Debt Partners is a business operating in the debt collection industry, last known to be located at 330 S. Transit Road, Lockport, New York.  Joseph Torriere and Jacob Torriere (hereinafter the "Torrieres") are the only account signers for the business bank account, M&T # 8184, for Market Street Debt Partners, LLC.  The investigation has revealed that these individuals are/were involved in debt collection, purchasing/placing debt portfolios, and offering third-party payment processing services.  A review indicated that Market Street Debt Partners facilitated a high-volume of third-party debt collection payment processing.

14.     In addition to payment processing services, bank records show that Market Street Debt Partners receives credits to M&T 8184 as payments for selling or placing debt portfolios with other debt collection businesses.

## TORRIERES' OTHER BUSINESSES

15.     Further, Joseph Torriere, Jacob Torriere, and Heather Torriere are signers on the bank account for Orgin Processing, LLC., Northwest # 9463, which is believed to be an extension of their third-party payment processing business.  During the time period of May 7, 2019 to May 7, 2020, there are numerous payments from Orgin Processing/Northwest #9463 to Market Street Debt Partners/M&T 8184.

16.     Joseph Torriere is listed as the President of Spire Recovery Solutions, LLC, a collections agency listed at the same address of Market Street Debt Partners.  Torriere Holdings is also an affiliated entity.

## INVESTIGATION

17.     The investigation executed by HSI revealed that Miller utilized Miller's businesses to defraud victims in the illegal collection of debts.  Miller and Associates engaged in purchasing, stealing, or reusing debt portfolios from sources, sometimes from other debt collectors.  Further, unlawful debt collectors are known to use illegitimate or illegally obtained debt portfolios which are then used by the debt collectors to contact and defraud victims for payments (SUA proceeds).  In this case, the investigation indicated that Miller and Associate-1 knowingly collected on unlawfully obtained debt portfolios.

18.     The investigation revealed that Miller collected on certain debt portfolios using false or misleading practices to collect payments.  Miller's employees with the encouragement of Miller and Associates, called victims in an attempt to collect an already paid debt, engaged in "over-biffing" and used callous threats or scare tactics to cause payments from the victims.

19.    Miller and Associates encouraged the use of false or misleading practices by employees of Miller's businesses.  Miller's Associates and employees contacted debtors (victims) telephonically, and via email, coercing them into making payments by compelling false or misleading consequences.  Miller's Associates and employees impersonated or falsely claimed to be: couriers/process servers; attorneys; and law office representatives.  Miller's employees threatened false law enforcement action, civil lawsuits, criminal charges, and/or threatened to serve legal process at the debtor(s)'/victim(s)' home or place of employment. Employees utilized aliases, not their true names, when identifying themselves to the debtors/victims; these aliases changed periodically in an attempt to elude consumers and investigators.  These tactics implemented by Miller, Associates, and employees caused victims to make payment(s) through fear of false consequences.

20.    The payments from the victims were collected through interstate wires and constitute SUA proceeds.  The victim payments would be collected by Miller, submitted through M&T 8184, and ultimately remitted to Miller through M&T 8184 after the processing procedure.

**Search  and Seizure of Evidence at 1561 Kenmore Avenue, Kenmore, New York**

21.    On May 7, 2020, HSI executed a federal search warrant at Miller's office at 1561 Kenmore Avenue, Kenmore, New York (hereinafter "Miller's businesses location"). Law enforcement officers collected written scripts at the desks of the employees along with documents identifying Miller's various debt collection businesses and telephone phone numbers.  For example, documents bearing the following information were posted at

employees' desks which indicated Miller's collectors used a fake company name/address

when collecting SUA proceeds:

### OAK BARNES and ASSOCIATES

2316 Delaware Ave STE 205

Buffalo, NY 14216

Website: www.oakbarnes.com

Email: admin@oakbarnes.com

Callback Number 877-872-2319

Fax Number – 844-301-5015

**Debit/Pre-Paid Cards will be charged by "MSDP Processing"**

**Credit Card Payments through "The Law Firm of K.F."**


22.     Also, a script collected from Miller's businesses location read, in part:

> This information is for _____ my name is Steve Roberts.  I'm calling in regards
> to an order submitted to my office. I am scheduled to come out around _____
> to serve you court documents that are pertaining to pending charges that are being
> filed against you. Please understand this is my final attempt to deliver these
> documents. If I am unable to obtain your signature on my affidavit of services, I will
> have no choice but to forward these back to the filing firm as a Direct Refusal to
> accept them. (continued).

23.     The execution of the search warrant at Miller's businesses location and the

analysis of evidence collected revealed that the office was an organized, standard call center

for a debt collection business. The scripts demonstrate that the employees were instructed to

contact victims threatening false legal consequences in order to induce the victim to pay the

debt.  At the employees' desks were  computers, telephones, a variety of "shake down" scripts

(as illustrated above), various business names (some false), and telephone directory lists

bearing the collectors' fake names.   In January of 2020 prior to the search warrants, a representative from the New York State Attorney General's Office ("NYSAGO") telephonically contacted Oak Barnes and Associates to mediate a consumer complaint related to the Fair Debt Collection Practices Act.  The NYSAGO representative's call was transferred to Associate 1.  Associate 1 advised the NYSAGO representative to send correspondence associated with the complaint to Miller's businesses address (1561 Kenmore Avenue).  However, payment documents sent to victims on Oak Barnes and Associates letter head cited that Oak Barnes and Associates is located at "2316 Delaware Ave, STE 208, Buffalo, NY 14216."  Further, Oak Barnes and Associates was not a registered business name and is fictitious, used by Miller and Associates to defraud victims.

## **Example of Victims**

24.    Victims induced to make payments were directed to a merchant account/payment processor, Market Street Debt Partners/M&T 8184.  After those funds were received, they were funneled into Miller's numerous bank accounts through various mechanisms.  The investigation identified the following victim statements and transactions.

## J.M.

25.    Law enforcement agents spoke with J.M. who resides in Florida.  In or about October of 2019, J.M. received calls from a representative from American Elite Recovery about an alleged debt.  J.M.'s parents were also contacted regarding this nonexistent debt and were told that J.M. would be arrested if it was not paid.  In an attempt to collect a payment from J.M., American Elite Recovery used J.M. and his/her spouse's personal information, including social security numbers.  J.M. stated, in sum and substance, that he/she was

11

"berated" for over twenty minutes on the telephone and American Elite Recovery insisted that the courts were involved and J.M. would be arrested over this matter. J.M. received a voicemail from someone claiming to be David Hampton from the Law Office of American Elite, advising J.M. that he needs to be "very careful" and that the courts are involved with the collection of this debt. David Hampton was later identified by HSI as a debt collector employed by Miller. J.M. received documents on American Elite Recovery letter head and a settlement document soliciting payment by American Elite Recovery for $532.50 stemming from a Spotloan; J.M. received these documents electronically from billing@americaneliterecovery.com. J.M. ultimately refused to pay American Elite Recovery. J.M. later determined that this outstanding debt balance was cancelled due to the loan's originator being subject to civil lawsuit proceedings and J.M. had no outstanding debt related to this attempt to collect by American Elite Recovery.

<u>V.M.</u>

26.     Law enforcement agents spoke to V.M., who resides in Virginia. In October of 2019, V.M. received phone calls from debt collectors claiming to be from Spotloan. V.M. subsequently contacted Spotloan and was advised that no one from Spotloan contacted V.M. V.M. later identified the callers as American Elite Recovery after receiving a settlement letter from American Elite Recovery. The communication from American Elite Recovery began with the callers "Randy" and "Paul Colvin" using V.M.'s personal information and loan balance information. V.M. believed that Randy and Paul Colvin are the same person. The callers also used the name ARS Collections. Randy stated that if V.M. did not respond to this payment request, American Elite Recovery would send someone to his/her house, and it

will result in "federal charges."   V.M. then spoke to the manager (Associate) who setup payments with V.M.'s Apple Federal Credit Union debit card.   V.M. stated that manager (Associate) was irate after he/she initially refused to pay.   Soon after submitting his/her debit/credit card payment information to American Elite Recovery, V.M. was contacted by his/her bank because the bank had detected several fraudulent charges to his/her account, in addition to the debt collection payment, that he/she did not authorize.

27.     V.M.'s Apple Federal Credit Union statement showed a transaction paid to MSDP Processing (merchant identifier for Market Street Debt Partners) dated November 1, 2019 for $300.00.   On November 8, 2019, M&T 8184 remitted $5,741.60 to Miller which is a lump/batched sum of victim payments (SUA proceeds) for the week that V.M. was defrauded by Miller.

<u>B.M.</u>

28.     Law enforcement agents contacted B.M., who resides in Arizona.   In 2014, B.M. borrowed money from a payday loan when he/she was laid off.   B.M. stated that he/she paid this loan back in full.   B.M. stated she received phone calls from debt collectors in or about December of 2019 and that the callers claimed they were going to serve her with legal papers and there would be legal repercussions unless money was paid.   B.M. complied and paid at the callers' requests for payments and paid $1,000 with two $500 prepaid debit cards that B.M. purchased from a Safeway grocery store.   In or about December of 2019 and the subsequent months, Miller's bank accounts at Tonawanda Community Federal Credit Union bank account received ongoing, weekly wire transfers from M&T 8184.

29.     During the execution of the search warrant by law enforcement on May 7, 2020, B.M.'s personal information, debit/credit card information, and scheduled payments were located on a "Credit Card Authorization Form" at Miller's businesses location.  The documents located at the desks in Miller's debt collection office indicated that pre-paid cards collected from victims are processed by MSDP Processing (as indicated above this is the merchant identifier for Market Street Debt Partners).

G.N.

30.     Law enforcement agents contacted G.N., who resides in Pennsylvania.  G.N. stated that he/she paid debt collectors hundreds of dollars in December of 2019.  G.N. stated that the callers threatened arrest by the Sheriff, claimed they would serve papers/process, and that G.N. will be subject of a lawsuit.  G.N. stated he/she paid the debt collectors through his/her Huntington bank account.

31.     G.N.'s bank statements shows two transactions paid to Miller via third-party payment processor MSDP Processing and dispersed through M&T 8184:

| December 23, 2019 | $150 |
| January 6, 2020   | $408 |

32.     At the time of G.N's transactions, M&T 8184 received deposits indicative of merchant disbursements.  These ongoing merchant disbursements to M&T 8184 contained batched consumer transactions submitted to the merchants by Miller though Market Street Debt Partners.  These merchant deposits (containing SUA proceeds) were deposited into M&T 8184 and were wired to Miller as follows:

- On December 27, 2019, M&T 8184 received a check deposit from Exertus Holdings for $171,840.18.

- On December 27, 2019, M&T 8184 received a wire from Osiris Capital for $40,016.

- On December 27, 2019, M&T 8184 received a deposit from BankCard for $5,953.89.

- On January 7, 2020, M&T 8184 received a check deposit from Orgin Processing for $67,846.16.[1]

- From January 7, 2020 to January 10, 2020, M&T 8184 received four deposits from BankCard totaling $39,671.54; January 7- $18,556.32, January 7- $7,805.34, January 9- $7,783.87, January 10- $5,526.01.

- Miller's Tonawanda Community Federal Credit Union bank account received wire transfer remits from M&T 8184 following G.N.'s transactions on about December 27, 2019 for approximately $21,183.06; and on or about January 10, 2020 for approximately $19,474.87.

33.     During the execution of the search and seizure warrants by law enforcement on May 7, 2020, at Miller's businesses location. G.N.'s personal information and scheduled payments were located on a payment document.

<u>H.S. and B.S.</u>

34.     Law enforcement agents contacted H.S. and B.S., who reside in North Carolina.  In or about December 2019, H.S. and B.S. stated that they paid AME Associates debt collectors.  Initially, H.S., his/her spouse, and ex-spouse received ongoing calls from debt collectors threatening various repercussions unless money was paid.  The debt collectors stated they were filing a judgment against him/her for bank fraud stemming from an alleged

---

[1] Orgin Processing's bank account signers are Heather, Joseph, and Jacob Torriere, as previously stated Joseph and Jacob Torriere are the signers for M&T 8184.

outstanding payday loan.  H.S. stated that this loan was previously paid back in full and was

not aware of an outstanding balance.  H.S. provided the callers with his/her bank information

and the debt collectors drafted approximately two payments.  H.S.'s State Employees' Credit

Union bank statement showed the following transactions:

> December 26, 2019, MSDP Processing     $50
>
> January 6, 2020, MSDP Processing       $581.25

35.    Miller's Tonawanda Community Federal Credit Union account in the name of

AME Professionals received the following individual wires from Market Street Debt Partners

which is believed to contain the SUA proceeds commingled with that week's total payments,

each exceeding $10,000:

> December 31, 2019   $15,210.31
>
> January 10, 2020    $19,474.87

36.    H.S. provided the following transcribed telephone voicemail, which he/she

received on or about December 23, 2019, which led to the payment:

> "Hi this message is for [H.S.] my name is Michelle I'm calling you today in regards for
> an order I was [inaudible] my office this morning for you I'm scheduled to come out
> today between the hours of 12 and one to serve you some court documents they are
> addressing pending charges been filed against you so if you wanna find out there
> pertaining to or if you're just going to be available to sign some today at our [inaudible]
> need to contact the filing firm just [inaudible] them immediately Uber [number] is
> 888365775 time um if I don't hear back from which [inaudible] scheduled I will see
> you shortly [inaudible] your home [inaudible] employer and good luck…"

**Miller's Jail Calls**

37.     During the time period of May of 2019 to August of 2019, in numerous recorded jail calls while incarcerated, Miller discussed the debt collection business.  Miller discussed the debt collection business with Associates, typically daily, receiving updates on business performance and detailed banking activity.

38.     Specifically, on a jail call on August 9, 2019, Associate 2 mentions awaiting a pending remit (a lump deposit of batched debt collection victim payments/SUA proceeds) from MSDP.  The bank records for M&T 8184 show that proceeds were deposited into M&T 8184 and the approximate amount of $4,314.56 in SUA proceeds were wired into Miller's Bank on Buffalo account on August 9, 2019.

**MARKET STREET DEBT PARTNERS ACTIVITY**

39.     A review of bank records for M&T 8184 showed this account was utilized to receive deposits from merchant accounts that processed SUA proceeds originating from victim debit/credit card payments; then the SUA proceeds, collectively containing a batch of victim payments, were disbursed by wire transfer from M&T 8184 as a weekly lump sum payment to Miller.  These wire transfers were disbursed from M&T 8184 to Miller and constitute violations of Title 18, United States Code, Section 1343 (wire fraud); Title 18, United States Code, Section 1349 (conspiracy to commit wire fraud); and Title 18, United States Code, Section 1957 (money laundering).

40.     The investigation showed that Miller shifted among many financial institutions, doing business as various entities and under the cover of a roofing/construction

business, while mainly conducting a wire fraud scheme/unlawful debt collection activity. From about July of 2018 to the execution of the federal seizure warrant on May 7, 2020, Market Street Debt Partners retained Miller as a payment processing client; and disbursed ongoing wire transfers benefitting Miller's frequently changing: business names; banks and bank accounts.

41.    From about May 10, 2019 to May 1, 2020, Miller received approximately $479,237.91 from Market Street Debt Partners (M&T 8184).  This money constitutes SUA proceeds derived from wire fraud violations committed by obtaining the victims' money through unlawful debt collection activities.

42.    This investigation, experience investigating debt collectors, and review of Market Street Debt Partners/M&T 8184 during the time period of May 7, 2019 to the May 7, 2020 seizure date indicated the following flow of SUA proceeds:

   a.  Miller through his wire fraud scheme/unlawful debt collection activity collects a victim's debit/credit card information as payment for an alleged outstanding debt;

   b.  The victim's debit/credit card information was submitted to Market Street Debt Partners for third-payment processing;

   c.  Market Street Debt Partners provided the essential function of submitting the debit/credit card information to merchant account entities. Merchants transform the victims' raw debit/credit card payment information (i.e. name, card number, expiration date, charges, etc.) into actual money (SUA proceeds);

   d.  When debit/credit card payments were processed into monetary SUA proceeds by the merchant account entities, the SUA proceeds were funneled/deposited into M&T 8184 for final disbursement;

   e.  Weekly remittances were wired to Miller's bank accounts from M&T 8184.  Each remit (typically consolidated into a batched/lump sum weekly remittance) collectively contained numerous individual victim debit/credit card payments which constitute SUA proceeds; and

f.  Once the SUA proceeds were deposited into Miller's bank accounts, the SUA proceeds were available for liquidation and rapidly dissipated by Miller.

43.  Regarding KYC tool referenced above, Market Street Debt Partners, LLC failed to maintain the standard required by law for financial institutions as follows:

a.  Disregarded Miller's debt collection business utilizing many bank accounts and business names commingled with a roofing business;

b.  Disregarded Miller as a payment processing client receiving large weekly remittances from debit/credit card payments, operating as a lucrative and active "roofing" business despite the winter months which is not typical; and

c.  Disregarded Miller's receipt of wire transfers from Market Street Debt Partners to Miller's various bank accounts, held at several financial institutions, under various business names.

## FINANCIAL INVESTIGATION

44.  A financial review of bank accounts associated with Miller identified transactions involving large, recurring sums of money received from payment processors including Market Street Debt Partners, LLC.  After receiving SUA proceeds from M&T 8184, Miller utilized the SUA proceeds to fund his personal expenses, vehicle payments, travel, and debt collection related business expenses such as payroll for his employees.

### Money Laundering

### Title 18 United States Code, Section 1957 – Spending Statute

45.  From August 21, 2017 to May 7, 2020, Miller maintained known bank accounts with six  financial institutions at:  Bank on Buffalo; Citizens Bank; Evans Bank; Tonawanda Community Federal Credit Union; M&T Bank; and Riverside Community Federal Credit Union.  Miller and Associate2 in some cases, were the authorized signors on

these accounts.  The following table represents the number of accounts opened by Miller and also reflect the volume of disbursements received from M&T 8184.

46.    Approximately $479,237.91 in SUA proceeds were wired to/deposited into Miller's bank accounts from M&T Bank 8184 during a 12 month period as follows:

|   | Miller's Bank | Account # | Dates | Aggregate Amount | Wires from M&T 8184 |
|---|---|---|---|---|---|
| 1 | Bank on Buffalo | 5349 | 5/10/2019 to 11/8/2019 | $112,472.04 | 27 |
| 2 | Citizens Bank | 2938 | 11/15/2019 to 11/22/2019 | $11,605.58 | 2 |
| 3 | Evans Bank | 1231 | 11/29/2019 to 12/6/2019 | $29,902.84 | 2 |
| 4 | Tonawanda CFCU | 4350 | 12/20/2019 to 3/6/2020 | $233,709.78 | 12 |
| 5 | Riverside CFCU | 4889 | 3/18/2020 to 5/1/2020 | $91,547.67 | 8 |
|   | **TOTAL SUA Proceeds** |   | **5/10/2019 to 5/ 1/ 2020** | **$479,237.91** | **51** |

47.    The chart below highlights the transfer of SUA proceeds from M&T 8184 to Miller's Evans Bank Account #1231; Tonawanda Community Federal Credit Union Account # 4350) and Riverside Community Federal Credit Union Account # 4889.  The transactions listed in the chart below identify funds, constituting SUA proceeds or traceable to SUA proceeds in excess of $10,000, that were utilized to fund transfers to Miller's bank accounts and constitute violations of Title 18, United States Code 1957.

| Miller's Account | Date of Transaction | Amount | Description |
|---|---|---|---|
| Evans # 1231 | 11/29/2019 | $15,277.08 | Incoming Wire |
| Evans # 1231 | 12/6/2019 | $14,625.76 | Incoming Wire |

| | | | |
|---|---|---|---|
| Tonawanda CFCU# 4350 | 12/20/2019 | $26,510.94 | Incoming Wire |
| Tonawanda CFCU# 4350 | 12/27/2019 | $21,183.06 | Incoming Wire |
| Tonawanda CFCU# 4350 | 12/31/2019 | $15,210.31 | Incoming Wire |
| Tonawanda CFCU# 4350 | 1/10/2020 | $19,474.87 | Incoming Wire |
| Tonawanda CFCU# 4350 | 1/17/2020 | $24,346.80 | Incoming Wire |
| Tonawanda CFCU# 4350 | 1/24/2020 | $22,166.35 | Incoming Wire |
| Tonawanda CFCU# 4350 | 1/31/2020 | $25,748.54 | Incoming Wire |
| Tonawanda CFCU# 4350 | 2/7/2020 | $22,028.59 | Incoming Wire |
| Tonawanda CFCU# 4350 | 2/14/2020 | $10,922.08 | Incoming Wire |
| Tonawanda CFCU# 4350 | 2/21/2020 | $13,026.66 | Incoming Wire |
| Tonawanda CFCU# 4350 | 2/28/2020 | $16,800.94 | Incoming Wire |
| Tonawanda CFCU# 4350 | 3/6/2020 | $16,290.64 | Incoming Wire |
| Riverside CFCU# 4889 | 3/23/2020 | $18,874.44 | Incoming Wire |
| Riverside CFCU# 4889 | 3/27/2020 | $19,456.95 | Incoming Wire |
| Riverside CFCU# 4889 | 4/3/2020 | $14,528.71 | Incoming Wire |

| Riverside CFCU# 4889 | 4/10/2020 | $11,424.23 | Incoming Wire |
|---|---|---|---|

48.     Therefore, based on law enforcement's training and experience, knowledge of this investigation, and analysis of the bank records, M&T 8184 had been involved in a money laundering transaction(s) and/or traceable to property involved in a money laundering transaction(s), and is therefore subject to forfeiture pursuant to Title 18 U.S.C §§ 981(a)(1)(A) and 984 as property involved in a money laundering transaction(s) and/or as property traceable to such property.

**Orgin Processing/Northwest Account #9463**

49.     Northwest Account #9463 was opened on or about June 20, 2017 with Joseph Torriere, Jacob Torriere, and Heather Torriere as the last known signers.  The account activity indicated ongoing deposits containing debit/credit card proceeds from the merchant service BankCard, similar to the merchant deposits flowing directly into M&T 8184.  Northwest Account #9463 received merchant proceeds and then transferred these proceeds into M&T 8184 which then funded disbursements to Miller's bank accounts.

50.     From May 7, 2019 to May 7, 2020, the Torrieres' payment processing activity as Market Street Debt Partners; and Orgin Processing showed the following:

- M&T 8184 received $2,380,990.18 in merchant deposits from BankCard and disbursed these proceeds to Miller and other debt collection businesses by wire transfers;

- Northwest 9463 received $3,725,175.84 in merchant deposits from BankCard;

- Northwest 9463 deposited checks totaling $3,447,278.11 in merchant deposits into M&T 8184 for the purpose of disbursing the proceeds to Miller and other debt collection business by wire transfer.

### M&T Account 8184

51.    M&T Account 8184 was opened in February 2014.  A review of the bank records shows that victims' funds (SUA proceeds) were wired from M&T Bank #8184 to Miller's bank accounts[2].

52.    As previously indicated herein, from about May 10, 2019 to May 1, 2020, approximately $479,237.91 in SUA proceeds were deposited into M&T 8184, then from M&T 8184, SUA proceeds were wired/transferred to Miller's bank accounts at: Bank on Buffalo; Citizens Bank; Evans Bank; Tonawanda Community Federal Credit Union; and Riverside Community Federal Credit Union.  Miller's bank accounts were registered under various names purportedly for Miller's contracting/roofing business.  Due to Miller's banking activities, certain bank accounts were opening and closing frequently; therefore, the timely detection and seizure of Miller's bank accounts was not feasible.

53.    The review of the bank records shows the movement of SUA proceeds in M&T 8184.  The SUA proceeds were collected from the victims; processed by the merchants; funneled by merchants and outsourced merchant entities into M&T 8184; and then the SUA proceeds were wired from M&T 8184 to Miller.  The pattern is consistent with the flow of SUA proceeds set forth in paragraph 40, above.

---

[2] Miller's bank accounts were closed by banks due to Miller's ongoing funds received in the form of debt collection proceed deposits.  Miller continued to receive wires from M&T 8184 to other bank accounts that he opened.

54.     The SUA proceeds were wired from M&T 8184 to Miller's bank accounts as

follows:

i.      Miller's business account at Bank on Buffalo, in the name of American Elite
Contractors, Account # 5349 during the time period of May 10, 2019 to
November 8, 2019 received wires from M&T 8184, Market Street Debt
Partners in the aggregate amount of $112,472.04.  The account was closed
about December 2019.

ii.     Miller's American Elite Contractors, Account # 2938 at Citizens Bank during
time period of November 15, 2019 to November 22, 2019 received two (2)
incoming wires from M&T 8184, Market Street Debt Partners LLC totaling
$11,605.58.  The account was closed in about December 2019.

iii.    Miller's Evans Bank account in the name of AME Professionals, Account #
1231 was opened in November 2019 and closed about December 2019. When
opening this account, AME Professionals indicated that the "nature of
business" was "Construction" by the account owners on the Customer
Information Profile document.  From November 29, 2019 to December 6,
2019, this account received wires from M&T 8184, Market Street Debt Partners
in the aggregate amount $29,902.84.

iv.     Miller's bank account at Tonawanda Community Federal Credit Union in the
name of AME Professionals, Account # 4350 for the time period of December
20, 2019 to March 6, 2020, received wires from M&T Account 8184, Market
Street Debt Partners totaling approximately $233,709.78.

v.      Miller's Riverside Community Federal Credit Union account in the name of
AME Professionals, Account # 4889 from the time period of March 12, 2020
to May 1, 2020 received wires from Market Street Debt Partners totaling
approximately $91,547.67.

55.     The SUA proceeds received by Miller's wire fraud/illegal debt collection

activities   $112,472.04, $11,605.58, $29,902.84, $233,709.78, and $91,547.67 (total of

**$479,237.91**) were wired to M&T 8184 for the time period of May 7, 2019  to May 7, 2020

(the seizure date of the defendant currency).  As a result, M&T 8184 played an essential role

in processing the victims' payments (SUA proceeds) by: routing victim payment information

to merchant accounts, placing the SUA proceeds into the banking system as a third-party; and

disbursing the SUA proceeds to Miller's accounts and the commission of violations of Title 18, United States Code 1957.

## CONCLUSION AND RELIEF REQUESTED

56.    Therefore, M&T 8184, which contained the defendant currency, had been funded with money which constitutes proceeds of SUA or was derived from proceeds traceable to SUA, namely wire fraud and conspiracy to commit wire fraud, in violation of Title 18 United States Code, Sections 1343 and 1349, and is therefore subject to forfeiture pursuant to Title 18 United States Code, Sections 981(a)(1)(C) and 984 as proceeds of SUA and/or property traceable to proceeds of SUA.  In addition, M&T 8184 (defendant currency) had been involved in a money laundering transaction and/or traceable to property involved in a money laundering transaction and  is subject to forfeiture pursuant to Title 18 United States Code, Sections 981(a)(1)(A) and 984 as property involved in a money laundering transaction and/or as property traceable to such property.

WHEREFORE, the United States of America respectfully requests that:

(1)    that an arrest warrant in rem be issued for the arrest of the defendant currency;

(2)    that all persons having any interest therein be cited to appear herein and show cause why the forfeiture should not be decreed;

(3)    that a judgment be entered declaring the defendant currency be condemned and forfeited to the United States of America for disposition in accordance with the law;

(4)    that the costs of this suit be paid to and recovered by the United States of America; and

(5)    that the Court grant such order and further relief as deemed just and proper.

DATED:      April 5, 2021 at Rochester, New York.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York


By:      s/GRACE M. CARDUCCI
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
500 Federal Building
100 State Street
Rochester, New York 14614
(585) 399-3954
Grace.Carducci@usdoj.gov

STATE OF NEW YORK   )
COUNTY OF ERIE        ) ss:
CITY OF BUFFALO      )

THOMAS W. MOZG, being duly sworn, deposes and says:

I am a Task Force Officer with the United States Immigration and Customs Enforcement, Homeland Security Investigations within the Department of Homeland Security. I am the agent assigned to the forfeiture case against $392,495.08 United States Currency, seized from M&T Bank No. ending in 8184, held in the name of Market Street Debt Partners LLC behalf of the United States of America. The facts alleged in the Complaint for Forfeiture are true to the best of my knowledge and belief based upon information officially furnished to me by the officials of the Department of Homeland Security, and provided to the officials of the United States Department of Justice, United States Attorney's Office.

s/Thomas W. Mozg
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me
this day 1st of April 2021.

s/Cheryl LoTempio
       Notary Public

Cheryl LoTempio
Notary Public, State of New York
Qualified in Erie County
Commission Expires 6/20/2022